UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CARLOS CHILLOGALLI PUZHI, | |
| Petitioner, | |
| v. | CAUSE NO. 3:25-CV-1062 DRL-SJF |
| BRIAN ENGLISH, Warden of Miami Correctional Facility; KRISTI NOEM, Secretary of the United States Department of Homeland Security; UNITED STATES DEPARTMENT OF HOMELAND SECURITY; TODD LYONS, Acting Director of United States Immigration and Customs Enforcement; SAMUEL OLSON, Interim Director of United States Immigration and Customs Enforcement Chicago Field Office; PAMELA BONDI, Attorney General of the United States; and EXECUTIVE OFFICE FOR IMMIGRATION REVIEW, | |
| Respondents. | |

OPINION AND ORDER

Immigration detainee Carlos Chillogalli Puzhi, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, arguing he is being unlawfully detained in United States Immigration and Customs Enforcement (ICE) custody under the mandatory detention provision in 8 U.S.C. § 1225(b)(2). Mr. Chillogalli Puzhi is an Ecuadorian citizen who arrived in the United States in 2021. He was immediately apprehended by ICE but released the following day on his own recognizance pending removal proceedings. He subsequently sought asylum and other forms of relief.

Mr. Chillogalli Puzhi was re-arrested in October 2025 when he appeared for an ICE check-in pursuant to his release conditions and was removed to Ecuador while his appeal to the Board of Immigration Appeals was still pending. After his counsel raised the issue of the pending appeal, he was subsequently brought back to the country by ICE on December 2, 2025, through a parole entry. He was transferred to Miami Correctional Facility (MCF), where he remains. His motion for an individualized bond hearing was denied by an immigration judge for lack of jurisdiction, because the government categorized him as ineligible for bond under 8 U.S.C. § 1225(b)(2).[1]

In an order to show cause, the court directed the respondents to answer the petition in light of *De Jesús Aguilar v. English*, No. 3:25-CV-898 DRL-SJF, 2025 WL 3280219, 8 (N.D. Ind. Nov. 25, 2025), which joined the overwhelming majority of other district courts in concluding that § 1225(b)(2) does not apply to noncitizens who are not "seeking admission" within the statute's meaning. The respondent—really just his current custodian by law

---

[1] His efforts to obtain a bond hearing are outlined in his reply. On December 16, 2025, an immigration judge in Chicago denied his bond motion for lack of subject matter jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). He renewed his request after a ruling was issued in *Maldonado Bautista v. Santacruz*, 2025 WL 3678485, 1 (C.D. Cal. Dec. 18, 2025), regarding the right to bond hearing for a class of persons who entered without inspection and were later detained. The motion was filed with the Chicago immigration court because the immigration judge there allegedly advised counsel to refile before the Chicago court if anything changed, though Mr. Chillogalli Puzhi was detained in Indiana. The Chicago court rejected the bond motion on the ground that it needed to be filed with the Indianapolis immigration court. Following the rejection, counsel filed a bond motion with the Indianapolis court. Oddly, the motion was calendared before the immigration judge in Chicago. That judge subsequently denied the motion without any mention of subject matter jurisdiction, stating that venue was proper in the Indianapolis court. Mr. Chillogalli Puzhi attempted to file bond motions with the Indianapolis immigration court, which were rejected for unknown reasons. He filed another bond motion on January 6, 2026, which was accepted and docketed by the Indianapolis court. On January 9, 2026, an immigration judge from the Indianapolis court denied the bond motion without hearing on the basis that he had not established a change in circumstances or errors in law or fact in the prior denial of bond.

because the others are named unnecessarily—was instructed to address why this case differs from *De Jesús Aguilar*, why the court should examine subject matter jurisdiction differently, and whether there is cause to address the outcome differently.

As a preliminary matter, Mr. Chillogalli Puzhi was ordered to show cause why every respondent but the Miami Correctional Facility Warden, the only respondent who exercises "day-to-day control" over him, should not be dismissed under *Kholyavskiy v. Achim*, 443 F.3d 946 (7th Cir. 2006). Relying on *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the court of appeals there concluded the proper respondent in an immigration habeas case challenging the constitutionality of a petitioner's confinement is the warden of the facility where the petitioner is being held, not a supervisory official who has the authority to free the petitioner. *See also Doe v. Garland*, 109 F.4th 1188, 1192 (9th Cir. 2024); *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3rd Cir. 2021). Mr. Chillogalli Puzhi concedes that the Warden is the proper respondent, though he prefers all parties remain. The court concludes that dismissal of the non-custodial respondents is appropriate. For sake of clarity, the court refers to the responding party as the Warden today.

The Warden (through his federal counsel) repeats his arguments from *Aguilar* and other recent cases that the court lacks jurisdiction over the petition and that Mr. Chillogalli Puzhi's detention is warranted by § 1225(b)(2) because he is "seeking admission" within the meaning of that statute. These arguments were rejected in *Aguliar* and subsequent decisions in this district, though *Aguilar* has been appealed. *See, e.g., Singh v. English*, No. 3:25cv962, 2025 WL 3713715 (N.D. Ind. Dec. 23, 2025) (Leichty, J.); *Mejia Diaz v. Noem*, No. 3:25cv960, 2025 WL 3640419 (N.D. Ind. Dec. 16, 2025) (Brisco, J.). The court continues to be of the view

3

that jurisdiction is secure insofar as this opinion goes, and that § 1225(b)(2) cannot reasonably be interpreted in the manner urged by the government. Notably, the Seventh Circuit recently held in deciding a motion for a stay pending appeal that the government was not likely to succeed on the merits of its argument that the mandatory detention provision contained in § 1225(b)(2) applies to individuals who are arrested in the interior of the United States. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025). The court has read the 2-1 decision in *Buenrostro-Mendez v. Bondi*, 2026 WL 323330 (5th Cir. Feb. 6, 2026), but remains unpersuaded.

The question today is whether there is anything unique here that would warrant a different conclusion than that reached in both *Aguilar* and *Singh*. The court can find no such reason. Indeed, it strikes as curious that when the government initially encountered Mr. Chillogalli Puzhi at the border in 2021, he was released on bond and lived in the United States with the government's permission until his re-arrest in 2025.[2] Though he may be an "applicant for admission" within the meaning of § 1225(b)(2), he cannot be said to be "seeking admission" for the same reasons the court articulated in both *Aguilar* and *Singh*.

That leads the court to 8 U.S.C. § 1226(a), the "default rule" for detention of noncitizens who are "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). "On a warrant issued by the Attorney General, an alien may be arrested and detained" while removal proceedings are pending, and the Attorney General "(1) may

---

[2] In his petition, Mr. Chillogalli Puzhi relies solely on being eligible for a bond hearing under § 1226(a) for relief. He does not argue his prior release on bond entitles him to any additional procedures until his reply brief, so the court focuses on the argument that he was improperly classified under § 1225(b)(2). *See White v. United States*, 8 F.4th 547, 552 (7th Cir. 2021) (noting arguments raised for the first time in reply brief are waived).

4

continue to detain the arrested alien; and (2) may release the alien on (A) bond . . . or (B) conditional parole" until removal proceedings conclude. 8 U.S.C. § 1226(a). The court, as it always does, begins with the plain language of this statute. It is permissive, not mandatory, and it affords an election—either the Attorney General may continue to detain the noncitizen or the Attorney General may pursue a bond hearing (insofar as the limitations in § 1226(c) do not apply of course).

Immigration officials issued a warrant for Mr. Chillogalli Puzhi's arrest. By statute, a noncitizen detained pursuant to a warrant may be released by the Attorney General (subject to certain statutory limitations that no one argues apply here), or he may be detained pending a decision on whether he will be removed from the United States. *See* 8 U.S.C. §§ 1226(a), (c). The court observes that our high court likewise has recognized the permissive nature of this language. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 526-27 (2021); *Jennings*, 583 U.S. at 306.

The Attorney General has delegated her discretion by regulation—first, to specified immigration officers who may "release an alien not described in [§ 1226(c)(1) (regarding criminal aliens)], under [bond or conditional parole]; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8). That is called an initial custody determination. After that initial custody determination, a noncitizen may apply to an immigration judge for a custody redetermination, and the immigration judge is authorized to exercise the authority in § 1226 "to detain the alien in custody, release the alien, and determine the amount of bond, if any,

5

under which the respondent may be released." 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1); *see also* 8 C.F.R. § 1003.19 (detailing procedures for custody or bond redeterminations by an immigration judge). When a noncitizen files this motion, an immigration judge, under immigration court rules, must "in general" schedule a "hearing for the earliest possible date," though in "limited circumstances" the immigration judge may rule on a bond redetermination request without a hearing. Immig. Ct. Practice Manual § 9.3(d). A noncitizen may appeal a decision relating to bond and custody determinations to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).

Both noncitizens and the government alike must comply with the immigration laws that exist, as written and as they must work within the demands of constitutional due process. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 701 (2001); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). The government has predetermined the procedures that apply to noncitizens who are arrested and detained under § 1226, and due process requires merely that these procedures be fairly given, not taken away. *See Accardi*, 347 U.S. at 266-68; *see, e.g., Jideonwo v. I.N.S.*, 224 F.3d 692, 697 (7th Cir. 2000); *Montilla v. I.N.S.*, 926 F.2d 162, 166 (2d Cir. 1991). Mr. Chillogalli Puzhi gives no reason to believe that this process is insufficient. The court will order no more and no less than what is expected of immigration officials by law. *See Accardi*, 347 U.S. at 268; *see also United States v. Nixon*, 418 U.S. 683, 696 (1974) ("So long as this regulation [delegating Attorney General's discretion to a Special Prosecutor] remains in force the Executive Branch is bound by it, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.").

Mr. Chillogalli Puzhi tried to obtain a custody redetermination, before judges in both Chicago and Indianapolis. Though these decisions involved some jurisdictional ping-pong as he moved locations or otherwise filed his requests in different locations, it seems that at least once, if indeed not twice, he was denied an individualized custody redetermination, either on the papers or via a bond hearing, because he was statutorily ineligible for bond under § 1225(b)(2). The judges were following BIA guidance, but erroneous guidance as it turns out.

Although Mr. Chillogalli Puzhi presses for outright release, that exceeds what would be a reasonable remedy on this record. After all, "Congress may make rules as to [noncitizens] that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003); *see also Reno v. Flores*, 507 U.S. 292, 305-06 (1993). Though the Fifth Amendment entitles noncitizens to due process of law in deportation proceedings, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523; *see also Wong Wing v. United States*, 163 U.S. 228, 235 (1896).

Instead, the court expects the government to follow its procedures laid out in the law appreciating that Mr. Chillogalli Puzhi has been detained pursuant to a warrant issued by an immigration official under § 1226. The government must provide Mr. Chillogalli Puzhi a custody redetermination through the process afforded to him for this. *See Varela Martinez v. Warden*, 2026 WL 322742, 4–5 (N.D. Ind. Feb. 6, 2026) (Leichty, J.). The court leaves it to the Attorney General to follow that process, including to decide whether to release Mr. Chillogalli Puzhi or to proceed differently. It is for the Attorney General, through the individuals delegated her authority, to decide whether release is warranted under the

7

circumstances. *See Bolante v. Keisler*, 506 F.3d 618, 620-21 (7th Cir. 2007) (federal court's inherent authority to release individuals seeking habeas corpus relief is curtailed by statutory structure that applies in immigration cases). Only if the Attorney General, acting through her designated officials, chooses to do nothing or fails to afford that process governing § 1226(a) proceedings must Mr. Chillogalli Puzhi be released. *See Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("Conditional writs enable habeas courts to give [authorities] time to replace an invalid judgment with a valid one, and the consequence when they fail to do so is always release.").

Mr. Chillogalli Puzhi requests that the government be ordered to act within three days, but he provides no authority for this specific timeline. An immigration judge is already instructed to conduct a custody redetermination at the earliest possible date, and the court hesitates to impose what may be an unrealistic deadline on the government, appreciating nonetheless that the petitioner has been awaiting the opportunity to be heard in this regard. Balancing Mr. Chillogalli Puzhi's understandable desire to have his custody status resolved as soon as possible with the realities of scheduling on a busy docket, the court concludes that a seven-day deadline is appropriate. And that timeline fits well within other federal habeas corpus decisions.

For these reasons, the court:

(1) DISMISSES United States Attorney General Pamela Bondi; United States Secretary of Homeland Security Kristi Noem; Acting Director of the United States Immigration and Customs Enforcement Todd M. Lyons; Interim Director of United States Immigration and Customs Enforcement Chicago Field Office Samuel Olson; the United

States Department of Homeland Security; and the Executive Office for Immigration Review as respondents;

(2) DENIES the petition (ECF 1), except to FIND that Carlos Chillogalli Puzhi must be classified under 8 U.S.C. § 1226(a) and to CONDITIONALLY ORDER the Warden to release Carlos Chillogalli Puzhi by February 17, 2026, only if he remains detained without a custody redetermination before an immigration judge in accordance with 8 U.S.C. § 1226(a) and corresponding regulations by February 17, 2026, at 5:00 pm ET;

(3) DIRECTS the clerk to email forthwith a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure compliance with this order, noting it will otherwise be electronically provided to the United States Attorney's Office for the Northern District of Indiana; and,

(4) ORDERS the Warden to file proof of compliance with this order, either to indicate that the custody redetermination process has been completed or the petitioner released, by February 18, 2026.

SO ORDERED.

February 10, 2026  *s/ Damon R. Leichty*
Judge, United States District Court